IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

| | | |
|---|---|---|
| BRENDA ROGERS, CHARLES ASKEW, | * | |
| JANET WRIGHT, MATTIE CLEMMONS, | * | |
| LEWIS DANABY, ROBERT JACKSON, | * | |
| BENNIE L. GRANT, Individually, and On | * | |
| Behalf of Others Similarly Situated, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | No. 2:06CV00160 SWW |
| | * | |
| HELENA-WEST HELENA SCHOOL | * | |
| DISTRICT, PHILLIPS COUNTRY #2, | * | |
| A Public Education System; RUDOLPH | * | |
| HOWARD, Interim/Special Appointed | * | |
| Superintendent of the Helena-West Helena | * | |
| School District; KENNETH JAMES, Director | * | |
| of the Department of Education, the State of | * | |
| Arkansas; THE ARKANSAS STATE | * | |
| SCHOOL BOARD COMMISSION; | * | |
| DR. CALVIN KING, DR. BEN MAYS, | * | |
| SHELBY HILLMAN, DIANE TATUM, | * | |
| DR. NACCAMAN WILLIAMS, RANDY | * | |
| LAWSON, DR. JEANNA WESTMORE- | * | |
| LAND, SHERRY BURROW, and MARY | * | |
| JANE REBICK, All Members of the | * | |
| Commission and Sued in Their Official | * | |
| Capacities, | * | |
| | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Before the Court is a motion to dismiss filed by the State Defendants Kenneth James, Director[1] of the Arkansas Department of Education; the Arkansas State School Board Commission[2]; and Dr. Calvin King, Dr. Ben Mays, Shelby Hillman, Diane Tatum, Dr. Naccaman Williams, Randy Lawson, Dr. Jeannna Westmoreland, Sherry Burrow, and Mary Jane Rebick, all members of the Arkansas State Board of Education.  Plaintiffs responded to the motion.  For the reasons stated below, the motion is granted.

## Background

Plaintiffs are all residents of Phillips County, Arkansas, and were employed by separate defendant Helena-West Helena School District ("the District") in non-certified positions.  They are all African-Americans.  According to the State Defendants, on April 11, 2005, the Arkansas State Board of Education declared that the District was in "fiscal distress," *see* Ark. Code Ann. § 6-20-1904 (Supp. 2005), and on September 8, 2005, pursuant to § 6-20-1909 (Supp. 2005), the Arkansas State Board of Education suspended the District's School Board.  The Arkansas Department of Education took over the operation of the District, and plaintiffs subsequently were fired by separate defendant Rudolph Howard, the State-appointed superintendent of the District.

Plaintiffs sue the Commissioner James, the Arkansas State Board of Education, and the members of the Arkansas State Board of Education in their official capacities, asserting violations of their civil rights and voting rights as guaranteed by the Fourteenth and Fifteenth Amendments. They bring these claims  "as guaranteed by the qualification of 42 USC 1981, 42 USC 1982, 42 USC

---

[1]Pursuant to Ark. Code Ann. § 6-11-102 (Supp. 2005), the administrative head of the Arkansas Department of Education is the "Commissioner."

[2]The "State Board of Education" is the state agency vested with general supervision of the public schools of Arkansas, not the "Arkansas State School Board Commission."  *See* Ark. Code Ann. §6-11-105 (Supp. 2005).

1983." *See* Compl. at ¶ 8. Plaintiffs also assert the State Defendants violated the Voting Rights Act, 42 U.S.C. § 1973. The State Defendants move for dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

## Standard of Review

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint must be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996). The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *ACLU Foundation v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief that the plaintiff cannot prove what the complaint asserts. *Id. See also Hickman v. Tosco Corp.*, 840 F.2d 564, 565 (8th Cir. 1988); *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982). Thus, a motion to dismiss should be granted "as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## Discussion

**1.      Sovereign Immunity**

To the extent that plaintiffs seek monetary damages from the State Defendants, those claims are denied.  The Eleventh Amendment protects state officials sued in their official capacities from all claims except for certain forms of prospective equitable relief.

**2.      Section 1981 and 1982 Claims**

Section 1981 bars discrimination in the making and enforcing of contracts.  As amended by the Civil Rights Act of 1991, it provides in relevant part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens. . . .

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.  "A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell North Band Booster Ass'n,* 161 F.3d 1178, 1181 (8th Cir. 1998).  Therefore, plaintiffs' § 1981 claim against the State Defendants should be dismissed.

Section 1982 bars racial discrimination in transactions involving real or personal property. It states:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.  Courts construe § 1982 as coextensive with § 1981.  Plaintiffs make no allegation that the State Defendants denied them the right to inherit, purchase, lease, sell, hold, and

convey real or personal property.  In addition, § 1982 does not appear to be an exception to the rule that actions to enforce federal rights against a state actor must be brought pursuant to § 1983.  Thus, plaintiffs' §1982 claims against the State Defendants should be dismissed.

**3.    Section 1983 Claims**

**a.  Employment**

Plaintiffs complain that separate defendant Howard, acting in his capacity as the State-appointed superintendent as a servant of the State Defendants, unlawfully terminated their employment contracts.  A governmental entity is not liable under § 1983 based upon actions of its employees under a theory of respondeat superior." *Id.*  Therefore, plaintiffs' § 1983 claims against the State Defendants concerning their employment should be dismissed.

**b.  Fourteenth Amendment**

Plaintiffs allege their rights to due process and equal protection were violated when the State Defendants "usurped control of their school district without the input participation notice to the true operators of the Helena-West Helena School District, i.e. the voters." *See* Compl. at ¶ 20. The State Defendants argue this claim is meritless because political subdivisions, such as school districts, cannot invoke the protections of the Fourteenth Amendment against the State itself; plaintiffs have no right or property interest in controlling the State's public education system in their district; and even if plaintiffs had a right to a hearing before the State Defendants suspended the District School Board, the appeal process outlined in Ark. Code Ann. § 6-20-1905 (Supp. 2005) provided an adequate state law remedy.

"To establish a procedural due process violation, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without sufficient process, *i.e.*, without due process." *Swipies v. Kofka,* 419 F.3d 709, 715 (8th Cir. 2005). Plaintiffs fail to establish that they have a protected liberty or property interest in controlling the public education system in their local school district. The control of the public school system is a State matter delegated and lodged in the State Legislature by the Arkansas Constitution. *See* Ark. Const. Art. 14, § 1; *see also Lake View Sch. Dist. No. 20 v. Huckabee,* 91 S.W.3d 472 (Ark. 2002). The Arkansas Legislature vested general supervision over all State public schools in the Arkansas State Board of Education. Ark. Code Ann. § 6-11-105(a)(1)(Supp. 2005).

Even assuming plaintiffs had a right to due process, *i.e.* a hearing, before the State Defendants suspended the District School Board and replaced it with a State-appointed superintendent, Ark. Code Ann. § 6-20-1905 provides for an appeal process. There is no allegation that the District, its School Board, or any of the plaintiffs exercised the right to appeal under the statute or were otherwise denied the right to do so.

To the extent they attempt to do so, plaintiffs fail to state a substantive due process claim. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. . . . [T]he state violates substantive due process when it engages in conduct that is so outrageous that it shocks the conscience or otherwise offends 'judicial notions of fairness, [or is] offensive to human dignity.'" *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998) (citation omitted). Plaintiffs make no

allegations which would support a claim that State Defendants' conduct shocked the conscience or otherwise offended judicial notions of fairness.

Plaintiffs allege in their brief in support of their response to the State Defendants' motion to dismiss that Ark. Code Ann. §6-20-1901 (Supp. 2005) is unconstitutional because it is vague, overbroad, and ambiguous.[3]  A non-criminal statute is unconstitutionally vague under the due process clause of the Fourteenth Amendment "when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice.  A noncriminal statute is not unconstitutionally vague, however, where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its prescriptions. A finding of vagueness will thus result only where 'the exaction of obedience to a rule or standard . . . was so vague and indefinite as really to be no rule or standard at all . . .' or where the statute is written in such terms that 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Horn v. Burns and Roe,* 536 F.2d 251,254 (C.A.Neb. 1976).

"Civil rights pleadings should be construed liberally.  At the very least, however, the complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Frey,* 44 F.3d at 671.  Plaintiffs point to no particular language in the statute to support their conclusory allegations that the Arkansas Fiscal Assessment and Accountability Program, Ark. Code Ann. §§6-20-1901 *et seq.* ("the Act"), is vague, ambiguous, and overbroad.  Because their

---

[3]Pls.' Br. in Supp. Resp. to Mot. to Dismiss at 3.

statement is entirely conclusory, the Court finds any due process claim made on these grounds should be dismissed.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  It directs that all similarly situated persons shall be treated alike but does not require things that are different to be treated the same.  *Plyler v. Doe,* 457 U.S. 202, 216 (1982).  When a classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class, equal protection analysis requires strict scrutiny of a legislative classification. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312-13 (1976).  "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631 (1996).

Pertinent provisions of the Act provide: "The purpose of this subchapter shall be to establish and implement a program by which the Department of Education shall identify, assess, and address school districts in fiscal distress." Ark. Code Ann. § 6-20-1902 (Supp. 2005).  "Any school district meeting any of the following criteria may be identified by the Department of Education to be a school district in financial distress upon final approval by the State Board of Education: (1) A declining balance determined to jeopardize the fiscal integrity of a school district; (2) Any act or violation determined to jeopardize the fiscal integrity of a school district . . . ; or (3) Any other fiscal condition of a school district deemed to have a detrimental negative impact on the continuation of educational services by that school district."  Ark. Code Ann. § 6-20-1904 (Supp.

2005).  Plaintiffs appear to assert that the Act violates their right to equal protection because it denies them the right to vote for their school board, prohibits former school board members from serving on the board and thus deprives plaintiffs of the right to retain their elected representatives, and treats them differently than other school district on account of their race.

In *Mixon v. State,* 193 F.3d 389 (6th Cir. 1999), voters and taxpayers of Cleveland, Ohio, challenged the constitutionality of an Ohio statute implementing an appointive system for school boards in municipal school districts while other school districts may elect their school boards.  The school districts to which the statute applied were those which faced financial and operational woes.  The Sixth Circuit held that the rational basis standard of review applied because the statute did not implicate a fundamental right or infringe on a suspect class.  The court said there is no fundamental right to vote for members of a school board, "even if other cities in the state may do so."  *Id.* at 403. *See also Welch v. Bd. of Educ.,* 477 F. Supp. 959, 964 (D.Md. 1979)(state statute providing for appointed school board in Baltimore County but elected school boards in eight of Maryland's twenty-three counties not itself suspect and does not interfere with exercise of fundamental right).

Just as there is no fundamental right to vote for members of a school board, there is no fundamental right to retain an elected official.  Where offices are created by statute, the Legislature may abolish the offices even during an incumbent's term.  *Robinson v. White,* 26 Ark. 139, 141 (1870)( "The Legislature has absolute control over all statutory offices, and may abolish them at pleasure; and in doing so no vested right is being invaded.") The school board offices were created by statute.  *See* Ark. Code Ann. § 6-13-634 (Supp. 2005).  Thus, the Arkansas Legislature has the

authority to modify their authority, vest in the Arkansas State Board of Education the power to suspend it, or even abolish the District School Board altogether.

To establish an equal protection claim based on race, plaintiffs must allege some set of facts that establish a racially discriminatory intent or purpose. Plaintiffs allege the Act violates the equal protection clause because it subjects African-American school districts to a more rigorous procedural analysis for determining compliance with fiscal and academic standards than Caucasian school districts. *See* Compl. at ¶¶ 34-35, 60-61.

The Seventh Circuit rejected an equal protection challenge to similar school reform in Chicago, Illinois. In *Hearne v. Chicago Bd. of Educ.,* 185 F.3d 770 (7th Cir. 1999), the plaintiffs challenged the constitutionality of a state statute that applied only to the Chicago public school system which the legislature had found was in an educational crisis. School district employees claimed the legislation which restricted their bargaining rights had a racially disparate impact. In dismissing plaintiffs' equal protection claim, the court said:

> [T]here is nothing here to indicate that the Illinois General Assembly structured the Chicago school reform legislation specifically because it wanted to disadvantage African Americans. There are substantial numbers of African Americans in many other cities in the state, and it is simply too great a stretch to say that the population represented by the Chicago school system is such a good proxy for African Americans that the ostensibly neutral classification is 'an obvious pretext for racial discrimination.' The plaintiffs' saying this is so in their pleadings is not enough to survive a Rule 12(b)(6) motion, when the legislation itself contains not a hint of an impermissible racial classification.

*Id.* at 776. *See also Moore v. Detroit Sch. Reform Bd.,* 293F.3d 352 (6th Cir. 2002)(Michigan School Reform Act establishing new school board for Detroit did not violate equal protection; in

absence of showing race discrimination was motivating factor, Act was rationally related to legislature's attempt to experiment with different techniques to advance public education).

A court must reject an equal protection challenge to a statutory classification "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Carter v. Arkansas,* 392 F.3d 965 , 968 (8th Cir. 2004)(internal quotation omitted). "A legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data," *id.*, and thus "it is not necessary to wait for further factual development." *Id.* "[A] district court may conduct a rational basis review on a motion to dismiss." *Id.* "Under rational basis review, challenged statutory classifications are accorded a strong presumption of validity, which is overcome only if the party challenging them negates 'every conceivable basis which might support it.'" *Independent Charities of America, Inc. v. State of Minnesota,* 82 F.3d 791, 797 (8th Cir. 1996)(citation omitted). "Legislative bodies are given broad latitude in their legislative determinations, 'and it is not the province of the courts to monitor the inputs into each legislative decision.' Similarly, 'the 'true' purpose of the ordinance, (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational-basis analysis.'" *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1201 (8th Cir. 1997) (citation omitted).

A review of the Act shows that it is racially neutral on its face and applies to all school districts regardless of racial composition. Plaintiffs cite no factual basis for their allegations of racial bias or motive. Because there are no facts to support the conclusory allegation of purposeful

discrimination, and their claims do not otherwise involve a fundamental right, plaintiffs' equal protection claims should be dismissed.

### c.  Fifteenth Amendment

Plaintiffs allege the Act violates the Fifteenth Amendment by depriving them of their right to vote on account of their race.  A statute that is racially neutral on its fact violates the Fifteenth Amendment only if it is motivated by a discriminatory purpose.  *Mobile v. Bolden,* 446 U.S. 55 (1980).  As explained previously, the Act is facially neutral, and plaintiffs have alleged no facts which would support a claim of discriminatory purpose.  Therefore, their § 1983 claim that the State Defendants violated their rights under the Fifteenth Amendment should be dismissed.

### 4.    Violation of the Voting Rights Act

Plaintiffs contend that "their right of franchise has been usurped by the State Defendants' take-over of their school district because of the denial by state action of the effectuation of their votes for a local school district in the September 2005, Helena-West Helena School Board election." Compl. at ¶ 57.  State Defendants seeks dismissal of plaintiffs' Voting Rights Act claim, arguing that plaintiffs are not proper parties; plaintiffs lack standing; and the Act does not prohibit a State from replacing a locally-elected school board with a State-appointed superintendent.

Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 ("the VRA"), prohibits a state or political subdivision from engaging in any practices which deny or abridge a person's right to vote on the basis of race.  "Political subdivision" is defined as  "any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting."  42 U.S.C.

§ 1973l(c)(2).   The State Department of Education and the State Board of Education are not counties or  political subdivisions.   Therefore, they are not proper defendants.   *See African-American Citizens for Change v. Robbins,* 825 F. Supp. 855 (E.D.Mo. 1993)(Board of Police Commissioners and its members not proper party defendants under Voting Rights Act).

State Defendants also argue plaintiffs lack standing to assert alleged violations of the VRA because their claimed injury does not falls within the "zone of interests" the VRA was intended to protect.   Plaintiffs disagree, arguing they as well as the class they seek to represent, all African-Americans who voted in the District's school board election, have standing.

"In addition to constitutional requirements, standing also involves prudential limits on the exercise of federal jurisdiction.   Prudential limits require a plaintiff to show the grievance arguably falls within the zone of interests protected or regulated by the statutory provision invoked in the suit."   *Rosebud Sioux Tribe v. McDivitt,* 286 F.3d 1031, 1036 (8th Cir. 2002).   "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."   *Warth v. Seldin,* 422 U.S. 490, 500 (1975).

State Defendants assert that the VRA was intended to protect racial and language-minority voters from practices that deny them the right to participate in the political process and elect representatives of their choice in elections placed before them, but the 'zone of interests' the VRA was intended to protect does not include the general desire to preserve "local control" or to preserve the status quo of a political subdivision or community.   While arguing they have standing to assert the rights of others similarly situated, plaintiffs make no allegation and no convincing argument that

13

the removal of the elected school board members by operation of state statute is within the zone of interests protected by the VRA.

It is well settled that the VRA does not apply to the appointment of non-legislative officials. *African-American Citizens for Change v. St. Louis Police Comm'r,* 24 F.3d 1052 (8th Cir. 1994); *African-American Voting Rights Legal Defense Fund, Inc. v. Missouri,* 994 F.Supp. 1105 (E.D.Mo. 1997), *aff'd* 133 F.3d 921 (8th Cir. 1998). The Supreme Court has held that a state can void application of the VRA by changing from an elective to an appointive system. *See Chisom v. Roemer,* 501 U.S. 380, 401 (1991) (VRA applies to judicial elections; however, state could exclude judiciary from coverage of VRA by changing to a system in which judges are appointed).

In arguing that the VRA does not prohibit a state from replacing a locally-elected school board with a state-appointed superintendent, State Defendants cite *Moore v. Detroit Sch. Reform Bd., supra,* and *Mixon v. State, supra.* As discussed previously, the Sixth Circuit held in *Mixon* that Section 2 of the VRA applies only to elective, not appointive processes and thus did not apply to appointed school board members. In *Moore*, the Michigan state legislature enacted a statute which suspended the powers and duties of the Detroit public school board, disqualified the existing school board members from appointment to the new school board, and vested the power of appointment in the mayor of the city. The district court dismissed the suit on the basis that the VRA does not apply to appointive processes, and the Sixth Circuit affirmed.

The Act at issue here vests in the Arkansas Department of Education the authority to promulgate regulations as necessary to identify, evaluate, assist, and address school districts in financial distress. *See* Ark. Code Ann. § 6-20-1911 (Supp. 2005). Like the legislation in *Mixon*

14

and *Moore*, this authority includes the power to replace elected school boards. *See* Ark. Code Ann.

§ 6-20-1909 (Supp. 2005).  The Court finds Section 2 of the VRA is inapplicable to the situation

here and plaintiffs' VRA claims should be dismissed.

### Conclusion

IT IS THEREFORE ORDERED that the motion to dismiss filed by the State Defendants

[docket entry 5] is hereby granted.

DATED this 4th day of October 2006.


<u>/s/Susan Webber Wright</u>

UNITED STATES DISTRICT JUDGE